## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JOHN BURR and RUTH BURR,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-03519 |
| | § | |
| **JPMORGAN CHASE BANK, N.A.** | § | |
| **and FEDERAL NATIONAL** | § | |
| **MORTGAGE ASSOCIATION** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Pending before the Court is Plaintiffs' Motion to Remand Based on Lack of Subject Matter Jurisdiction[1] and Defendants' Objection and Response.[2]  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court **DENIES** the Burrs' Motion to Remand.

### I.    BACKGROUND

Plaintiffs, John and Ruth Burr ("the Burrs"), owned a home located at 10831 Indian Vista Drive, Houston, TX 77064.  The Burrs were borrowers under a note and deed of trust held by Defendant Federal National Mortgage Association ("FNMA") and serviced by Defendant JPMorgan Chase Bank, N.A. ("JPMorgan").  In August 2011, the Burrs' home was foreclosed upon.

---

[1] Dkt. # 13.
[2] Dkt. # 15.

*The Burrs' State Court Petitions*

The Burrs originally filed suit against Defendants in the 80th Judicial District Court for Harris County, Texas—first filing an Original Petition and Application for Temporary Injunction on August 30, 2011 and then filing a First Amended Petition and Applications for Temporary Restraining Order and Temporary Injunction on September 26, 2011.[3]

The Burrs' first and second versions of their state court petition are virtually identical. The Burrs' verified state court petitions do not allege the value of the home, but they do state that the mortgage loan at issue was approximately $73,000. The Burrs admit that they fell behind on their mortgage payments and they allege that JPMorgan offered them the possibility of a loan modification. According to the Burrs, they fully complied with the terms of that proposed modification. The Burrs allege that, notwithstanding their compliance with the modified terms, JPMorgan then demanded additional payments and eventually foreclosed upon the home.

The Burrs accordingly asserted causes of action for detrimental reliance and breach of contract/wrongful foreclosure. As damages, they sought "reinstatement of title to the home upon which the Defendants have foreclosed" and to recover their attorney's fees.[4] The Burrs also sought injunctive relief to prevent the sale of the home while the suit was pending.

---

[3] Dkt. # 2, Supplement to Notice of Removal, pg. 6-15 (Plaintiffs' Original Petition) and pg. 19-31 (Plaintiffs' First Amended Petition).
[4] *Id.* at pg. 12, ¶ 20; pg. 25, ¶ 20.

2

### *Defendants' Removal to Federal Court*

Defendants removed the suit to federal court, asserting that federal subject-matter jurisdiction exists because diversity of citizenship between the parties is undisputed and the amount in controversy exceeded $75,000.[5]  Defendants' Notice of Removal alleged that "the property [at issue] is appraised at $77,500 by the Harris County Central [sic] Appraisal District."[6]

### *The Burrs' Second Amended Complaint*

In response, the Burrs filed a Second Amended Complaint in this Court.[7]  That Second Amended Complaint is now the live pleading in the case.  The Second Amended Complaint contains many of the same factual allegations made in the Burrs' state court petitions.  However, the Burrs also now contest the exercise of federal jurisdiction, alleging for the first time that the actual value of the home is $53,403.00.[8]

The Second Amended Complaint also added additional factual allegations that Defendants had violated the terms of the Home Affordable Mortgage Program ("HAMP") promulgated by the Obama Administration and the United States Treasury Department to implement the use of government funds in assisting homeowners, such as the Burrs, who were at risk of defaulting on their mortgages.  The Burrs also allege that FNMA violated its own guidelines in failing to allow the Burrs to modify their mortgage terms or to conduct a pre-foreclosure sale of the home.

---

[5] Dkt. # 1.
[6] Dkt. # 1, ¶ 7.
[7] Dkt. # 8.
[8] Dkt. # 8, ¶ 11 fn. 3.

The Burrs' Second Amended Complaint alleges causes of action for breach of contract, promissory estoppel, and violations of the Texas Finance Code.  As in state court, the Burrs seek "reinstatement of title to the home upon which the Defendants have foreclosed," recovery of their attorney's fees, and injunctive relief preventing the eviction of Burrs or the sale of the home.

### Burrs' Motion to Remand

In seeking remand, the Burrs do not dispute that complete diversity of citizenship exists between the parties to this suit.  Nonetheless, they contend the amount in controversy is less than $75,000 and that this Court therefore lacks subject-matter jurisdiction.  Defendants respond by arguing that the value of the home at the heart of this lawsuit is greater than $75,000, and that this Court should therefore retain jurisdiction and deny the Burrs' Motion to Remand.[9]

## II.   LEGAL STANDARD

The defendant in a civil action brought in state court may remove the suit to federal court, so long as the suit is one over which the federal court would have had original jurisdiction.  28 U.S.C. § 1441; *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010).  However, the original jurisdiction of federal courts is limited to "only the authority endowed by the Constitution and that conferred by Congress."  *Id.* (internal citations omitted).  In this case, Defendants based their removal upon section 1332, which vests federal district courts with original jurisdiction of all civil actions where the matter in controversy (1) exceeds the sum or value of $75,000,

---

[9] Dkt. # 15.

4

exclusive of costs and interest, and (2) is between citizens of different states.  28 U.S.C. § 1332(a)(1).  The Burrs now contend that this Court lacks jurisdiction under section 1332(a)(1) because the amount in controversy is less than $75,000.

Remand for lack of subject-matter jurisdiction is permissible at any time before final judgment, with or without a motion.  28 U.S.C. § 1447(c).  The party seeking to invoke the jurisdiction of a federal court carries the burden of establishing the existence of federal jurisdiction.  *Id.*  The removing party must establish "that federal jurisdiction exists and that removal was proper."  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

The amount in controversy is measured from the perspective of the plaintiff.  *See Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F.3d 636, 640 n.4 (5th Cir. 2003) (explaining that the court "focuses solely on the plaintiff's viewpoint to determine the amount in controversy in cases seeking equitable relief").  Further, if a state statute provides for attorney's fees, such fees are included as part of the amount in controversy.  *Foret v. Southern Farm Bureau Life Ins. Co.,* 918 F.2d 534, 537 (5th Cir. 1999).

To determine the amount in controversy, the court considers "the claims in the state court petition as they existed at the time of removal."  *Manguno*, 276 F.3d at 723.  Where, as here, a state court petition "does not include a specific monetary demand, [the defendant] must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000."  *Id.*  After a defendant has established by a preponderance of the evidence that the amount in controversy exceeds $75,000, remand is proper only where a plaintiff establishes that it is "legally certain that his recovery will not exceed the

5

amount stated in the state complaint." *In re Exxon Chem. Fire*, 558 F.3d 378, 387–388

(5th Cir. 2009) (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995)).

## III.   ANALYSIS

The Burrs' Motion to Remand argues that Defendants have not proved by a

preponderance of the evidence that the amount in controversy exceeds $75,000.  First, the

Burrs argue that the value of the home itself is not the proper measure of the amount in

controversy in this case.  Instead, the Burrs argue that the amount in controversy should

be determined by looking to the relief they seek, which they describe as "the opportunity

to have the foreclosure proceedings set aside until the merits of the foreclosure action

have been addressed"[10] or the "unwinding of the foreclosure action."[11]  Alternatively, the

Burrs argue that the Defendants' evidence that value of the home exceeds $75,000 falls

short of the required standard, and the Burrs point to their own evidence to argue the

home is actually worth less than that amount.

### A.   *The "Object of the Litigation"*

"In actions seeking declaratory or injunctive relief, it is well established that the

amount in controversy is measured by the value of the object of the litigation."  *Hunt v.

Washington State Apple Adv. Com'n*,  432 U.S. 333, 346-347, 97 S.Ct. 2434, 2443

(1977).  "To put it another way, the amount in controversy, in an action for declaratory or

injunctive relief, is the value of the right to be protected or the extent of the injury to be

prevented." *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983); *see also Waller v.*

---

[10]  Dkt. #13, ¶ 9.
[11]  *Id.* at ¶ 10, 11.

*Prof'l Ins. Corp.*, 296 F.2d 545, 547-48 (5th Cir. 1961) (holding that when a "right to property is called into question in its entirety, the value of the property controls the amount in controversy."). Relying in large part upon the holding in *Ballew v. America's Servicing Co.*, No. 4:11-CV-030-A, 2011 WL 880135, at 3 (N.D. Tex. Mar. 14, 2011), the Burrs argue that this Court should consider the value of "the object of the litigation" to be the value of "the opportunity to have the foreclosure proceedings set aside until the underlying merits of the foreclosure action have been addressed."[12]  The Court disagrees.

Based on a review of the allegations contained in the state court petitions, the Court finds that the "object of the litigation" is the home itself.  The essence of the Burrs' claims is that they are entitled to enjoin the further sale of the home and to regain title to the home, as well as recover their attorney's fees, based upon Defendants' wrongful actions and breaches of contract.  Accordingly, the Court finds that the value of the home is the proper measure of the value of the object of this litigation.  *See Waller*, 296 F.2d at 547-48; *see also Snipes v. Suntrust Mortg., Inc.*, No. 4:11–cv–00743, 2011 WL 3502800 (S.D. Tex. Aug. 10, 2011) (Hoyt, J.) (where plaintiff sought to enjoin foreclosure of home worth $65,856 and also alleged an "extensive" list of damages, motion for remand was denied); *Radey v. Chase Home Fin., LLC*, No. H-11-1547 2011 2415344 (S.D. Tex. June 13, 2011) (Miller, J.) (where plaintiff sought injunction preventing foreclosure, actual possible loss plaintiff faced would be title, interest and possession of real property valued at more than $75,000); *Berry v. Chase Home Fin., LLC*, No. C–09–116, 2009 WL 2868224, at *2–3 (S.D. Tex. Aug. 27, 2009) (Rainey, J.) (noting that, absent "judicial

---

[12] Dkt. # 13, ¶ 9.

relief, Plaintiff could be divested of all right, title, and interest to the Property" and that the value of declaratory and injunctive relief sought was property's fair market value).

The Court is not persuaded to the contrary by the Burrs' reliance on *Ballew* and similar cases. In *Ballew*, the plaintiff filed suit in state court to prevent foreclosure upon his home. 2011 WL 880135. The suit alleged that a defendant servicing company made material misrepresentations regarding his mortgage to him, and he challenged the right of another defendant, Wells Fargo Bank, N.A., to foreclose on his home because it was not the original holder of the notes. *Id.* at *1. The plaintiff asserted causes of action for fraud, wrongful debt collection practices and violations of the Texas Deceptive Trade Practices Act. He did not allege a specific amount of monetary damages, but he did pray for economic and punitive damages and attorney's fees, as well as declaratory and injunctive relief. As in the instant case, the defendants in *Ballew* removed the case to federal court under section 1332(a)(1), alleging that the parties were diverse and the amount in controversy was greater than $75,000. The district court, however, noted that the "value of the property is not necessarily equal to the value of the plaintiff's interest in the property." *Id.* at *2. After reviewing evidence, including evidence regarding the home's valuation by the local appraisal authority, the court held that the defendants had failed to establish that the amount in controversy exceeded $75,000. The court noted that there was no evidence of the amount of money plaintiff sought to recover on his fraud, wrongful debt collection and DTPA claims. Next, the court noted that the only evidence presented by the defendants was that of the fair market value of the property as estimated by the appraisal district. "Thus, defendants' contention that the amount in controversy

8

exceeds the jurisdictional threshold depends entirely on whether they are correct that the value of the declaratory and injunctive relief sought by plaintiff is equal to the fair market value of the property." *Id.* at *3. The declaratory relief sought by the plaintiff was a declaration requiring the production of the original promissory notes. The court succinctly observed that "[t]he value of such a declaration is not the value of the property, it is the value to the plaintiff of being able to inspect the original promissory notes prior to foreclosure." Similarly, the court noted that the injunctive relief sought was not a total injunction on foreclosure or sale of the home. Instead, the plaintiff sought an injunction against "selling or taking possession of the property *during the pendency of this cause*." *Id.* at 4. There was no evidence of the monetary value of either the declaratory relief or the injunctive relief sought, and the court accordingly remanded the action.

Here, the injunctive relief sought is a total unwinding of the foreclosure action and a "reinstatement of title to the home upon which the Defendants have foreclosed." Thus, even if this Court were wholly persuaded by the reasoning in *Ballew*,[13] a different result would be reached in this case. Instead, this Court finds *Govea v. JPMorgan Chase Bank, N.A.*, to be instructive. H-10-3482, 2010 WL 5140064 (S.D. Tex. Dec. 10, 2010). In *Govea*, United States District Judge Sim Lake found that the value of the object of the litigation where a homeowner sought injunctive relief against his mortgage lender was

---

[13]  One of the logical flaws of *Ballew* is that it "appears to overlook the practical reality that, if the parties who are attempting to enforce the plaintiff's mortgage do not have the right to do so, then there is very like no one to be found who does." *Bedard v. Mortg. Elec. Registration Sys.*, No. 11-cv-117-JL, 2011 WL 1792738 (D. N.H. May 11, 2011) (rejecting *Ballew's* analysis where plaintiff was alleging wrongful foreclosure, not merely seeking limited injunctive relief to prevent foreclosure during pendency of litigation).

the value of the home itself. In *Govea*, the homeowners filed suit—before foreclosure—against the holder of the note on their home. The homeowners asserted causes of action for breach of contract, fraud and negligent misrepresentation, and also asked the court for an injunction to stop the foreclosure of the home. *Id.* After removal, the homeowners filed a motion to remand on the ground that the amount in controversy was (1) less than $10,000 because the homeowners merely sought an accounting and reinstatement of their mortgage or (2) was limited to their equity in the property—$22,423.75. *Id* at *2. Judge Lake disagreed, noting that if the Goveas' request for injunctive relief was ultimately denied, they would "lose title to the property, a loss that must be taken into consideration in determining the total amount in controversy." *Id* at 9. "Although the Goveas' argument that the amount in controversy is limited to their $26,000 equity in the property ostensibly has merit, it fails to take into account that they would lose the right to occupy their home. In considering the true amount in controversy, the Goveas' continued right of occupancy, not merely their equity, is the right upon which the valuation should be based." *Id.* at *4, n. 24.

The same logic applies here, with even more force. The Burrs do not seek to prevent a foreclosure, as in *Govea* and *Ballew*. Instead, in this case, foreclosure has already occurred and the Burrs' state court petition on file at the time of remand sought "reinstatement of title to the home upon which the Defendants have foreclosed."[14] Accordingly, the "object" of the Burrs' request for relief is the title to the property itself,

---

[14]  Indeed, the Harris County Appraisal District valuation provided in the record names "Federal National Mtg Assn" as the current owner of the home. Dkt. # 15-2, Ex. B-1

and the "value of the extent of the injury to be prevented" is the amount of their loss if the foreclosure is upheld, the Burrs are evicted and the home is sold to another party. Therefore, the value of the property determines the amount in controversy.

**B.**     *Determining the Value by a Preponderance of the Evidence*

Next, the Burrs assert that—even if the relevant measure for jurisdictional purposes is the value of the home—this case should still be remanded because the value of the home is less than $75,000. In support of this argument, the Burrs attached three key exhibits to their Motion to Remand—Exhibit C, a Residential Broker Price Opinion ("BPO") valuing the home at $50,000 based upon the sales price of three comparable homes; Exhibit D, three Harris County Appraisal District ("HCAD") reports estimating appraisal values of the three comparable homes at values significantly higher than their sales prices; and Exhibit F, sworn affidavits sworn by John and Ruth Burr. Defendants object to Exhibits C and F. Each exhibit will be addressed in turn.

*1.*     *The Burrs' Evidence*

*a.  The Burrs' Brokers Price Opinion*

The Burrs' Exhibit C is a BPO report opining that the home at issue is worth approximately $55,000. The BPO report states that it was prepared on October 30, 2011, by James Mike Coleman of Realty Associates. No information regarding the credentials of Mr. Coleman or his relationship to Realty Associates is provided. The BPO report lists three other homes and gives the actual sales price and relevant details for each home. Then, presumably based upon the average price per square foot for these allegedly comparable homes, the BPO report opines that the market value of the home is between

11

$50,000 and $55,000.  Accompanying the BPO report is a business records affidavit from Michael R. Hooper, the Burrs' attorney.  Mr. Hooper's affidavit attests that he is the custodian of records for The Hooper Law Firm and that he is also a licensed real estate agent.  According to Mr. Hooper, "[t]he Residential Broker Price Opinion dated October 30, 2011, . . . was prepared on or about October 30, 2011 at our request by a person with knowledge of this property."  Mr. Hooper further attests that BPO reports "such as this one are made and kept in the court of regular business at The Hooper Law Firm."

Unless the affidavit of Mr. Hooper is sufficient to establish the BPO report as a business record exception under Rule 803 of the Federal Rules of Evidence, the report is hearsay.  With respect to Rule 803(6), "[t]he exception requires that either the custodian of the business records or 'other qualified witness' lay a foundation before the records are admitted."  *U.S. v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008).  However, "[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy."  *Id.* (footnote and internal quotation marks omitted).  "A qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met."  *Id.* (footnote and internal quotation marks omitted).

Defendants object to the business records affidavit provided by Mr. Hooper, arguing that it is defective and the BPO report is therefore inadmissible hearsay. Defendants base this contention upon the fact that the BPO report was apparently created for the use of Realty Associates, and not by The Hooper Law Firm.  However, even more problematic than the affidavit's failure to explain the circumstances of how or why a

12

document created by one firm ended up as a business record of another is the complete lack of information regarding the credentials of James Mike Coleman or the methods he used in reaching his opinion on the home's value. Even if the BPO report were properly authenticated as a business record, its lack of detail supporting its conclusions or the credentials of Mr. Coleman would be of little value to the Burrs in proving the value of the house at issue.

### b. HCAD Appraisal Values of "Comparable Homes"

Exhibit D provides three HCAD appraisal reports of what the Burrs contend are comparable homes, listed in their BPO report. The Burrs offer these appraisal reports to support their contention that HCAD appraisal opinions often differ—sometimes significantly—from the actual sales price of a home and therefore such HCAD appraisal reports should not be relied upon when determining the value of the home. However, like Exhibit C, these HCAD appraisal reports are presented almost wholly without context or explanation. There is no expert or lay opinion explaining to the court how these houses are similarly situated to the home at issue, and these exhibits therefore provide little guidance in determining the value of the home at issue.

### c. Affidavits of John and Ruth Burr

Exhibit F contains the sworn affidavits of John and Ruth Burr attesting that "the total amount in controversy, including any amounts to be recovered, does not exceed the jurisdictional limit of $75,000." Defendants object to these affidavits as unsupported and conclusory.

13

The Fifth Circuit clearly described the problematic "potential for manipulation" inherent in such post-removal affidavits in *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1254 n. 18 (5th Cir. 1998)—especially where the stipulation or affidavit does not align with the prayers of the pleadings on file at the time of removal.  "This is one reason why we have held that if a state court defendant can show that the amount in controversy actually exceeds the jurisdictional amount, then the state court plaintiff who is seeking to prevent removal must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in his state court complaint." *Id.*

The Burrs' post-removal affidavits stand in sharp contrast to their First Amended Petition and Application for Temporary Restraining Order and Temporary Injunction, the live pleadings at the time of removal.[15]  That Petition (1) recited that the mortgage on the home was approximately $73,000, and (2) in addition to injunctive relief, sought to recover the Burrs' attorney's fees.  Further, in their affidavits, the Burrs do not set out any facts to support their conclusion that the relief sought will not exceed $ 75,000—they do not, for example, describe their personal knowledge of the fair market value of their home, nor do they provide a reasonable estimate of what the attorney's fees they seek might be.

---

[15] Dkt. # 2, pg. 19-32.

14

2.      *The Defendants' Evidence*

To carry their burden of a preponderance of the evidence, Defendants rely on the HCAD appraisal of the home at $77,500 and their own BPO report opinion that the home's value is approximately $80,000.[16]

a. *HCAD Appraisal*

To support their contention that the house at issue is worth more than $75,000, Defendants supply a copy of the current HCAD appraisal report. Defendants provide a business record affidavit along with the report, sworn to by Defendants' attorney, affirming that he accessed the website of HCAD, who provides "[i]nformation regarding the certified value of properties located in Harris County,"[17] and obtained the records from that agency. The Burrs make no objection to the admission of affidavit or the attached HCAD appraisal.

The HCAD appraisal reports the value of the home as of January 1, 2011 at $ 77,500, and the same for January 1, 2010. The report also contains a 5-year history of the appraised value of the home: in 2009, it was appraised at $ 83,645, in 2008, it was appraised at $ 82,400 and in 2007, it was appraised at $ 84,900.[18] The Burrs argue, however, that the HCAD appraisal report should not inform the Court's analysis of the market value of the home because "the amount in controversy is determined from the perspective of the plaintiff." This is true with regard to the live pleading on file at the time of remand, which states that the mortgage on the home is worth approximately

---

[16]  Dkt. # 15-3, Ex. C-1.
[17]  Dkt. # 15-2, Ex. B, Affidavit of Brent J. Rodine, pg. 2.
[18]  Dkt. # 15-2, Ex. B-1, pg. 9.

$73,000 and seeks the recovery of attorney's fees, thus further increasing value of the requested relief. Next, the Burrs argue that the HCAD appraisal is flawed because it does not take into account the recent decline in the local housing market. The five-year history contained within the HCAD report submitted by Defendants reveals otherwise. Finally, the Burrs also seek to bolster their argument that HCAD has overvalued their home by pointing out that HCAD has a system in place to protest appraisal overvaluations.[19] However, none of the evidence submitted describes the existence or parameters of such system, and the Court finds these arguments without merit.[20]

### b. *Defendants' Brokers Price Opinion*

Defendants also provide their own BPO report prepared on February 21, 2011— prior to the onset of this litigation—by Julie Neymeyer, along with a business records affidavit by Ms. Neymeyer stating that she is a residential real estate broker and describing the preparation of the BPO.[21] Ms. Neymeyer's BPO report describes the general market conditions of the area, as well as her opinion on the marketability of the house with respect to other homes in the neighborhood.[22] She lists what she describes as "competitive closed sales" of other homes as well as "competitive listings." She opines that the market value of the home is between $75,000 to $85,000, and states that "Final value conclusion is more in line with listing comps than recently sold comps due to

---

[19] Dkt. # 13, ¶ 15.
[20] Further, the existence of such a program would cut against the Burrs' argument—if HCAD overvalued their property while they owned it, the Burrs could have used this system to protest the valuation rather than pay a higher amount of property taxes.
[21] Dkt. # 15-3, Ex. C and C-1.
[22] Dkt. # 15-3, Ex. C-1.

decreasing values, extended marketing times and an oversupply of inventory."[23]   The Burrs raise no objection to Ms. Neymeyer's affidavit or BPO report.

Reviewing the evidence presented by the parties, the Court finds the Defendants have shown, by a preponderance of the evidence, that the home at issue is worth more than $ 75,000.

## CONCLUSION

The pleadings on file at the time of remand establish that the Burrs seek injunctive relief preventing the sale of the home they allege was wrongfully foreclosed upon, that the mortgage at issue was for approximately $73,000, and the Burrs also prayed to recover an unspecified amount attorney's fees pursuant to a Texas statute.   Further, the Defendants proved by a preponderance of the evidence that the house at issue was worth at least $75,000, thus making the exercise of jurisdiction by the Court proper under section 1332(a)(1).   Accordingly, this Court **DENIES** the Burrs' Motion to Remand.


Signed at Houston, Texas on March 23 , 2012.


George C. Hanks, Jr.
United States Magistrate Judge

---

[23] *Id.* at pg. 6.