IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN BURR and RUTH BURR, | § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:11-CV-03519 |
| JPMORGAN CHASE BANK, N.A. and FEDERAL NATIONAL MORTGAGE ASSOCIATION | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

Before the Court is the Defendants' Motion to Dismiss the Burrs' Second Amended Complaint and Request for Preliminary Injunction (Dkt. # 11). The Burrs did not file a response but represented that they were opposed to the motion at a hearing held by the Court.[1] Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court **GRANTS** the Defendants' Motion, in part, and **DENIES** the motion, in part.

I. BACKGROUND[2]

On August 17, 2001, Plaintiffs John Burr and Ruth Burr (the "Burrs") executed a deed of trust and promissory note for approximately $73,000 to purchase a home. (Dkt. #

---

[1] The Court admonished the parties on the record, and again admonishes them by this Order, that any future failure to timely respond to a pending motion will be considered as no opposition to that motion and the Court will act accordingly. S.D. Tex. L.R. 7.4.

[2] For the purposes of this Memorandum and Order only, the Court assumes that the factual allegations contained in the Burrs' Second Amended Complaint are true.

1

8 ¶ 11). The promissory note was subsequently sold to Defendant Federal National Mortgage Association ("FNMA"). FNMA appointed Defendant JPMorgan Chase Bank, N.A ("JPMorgan") "to service the loan—that is, to collect the monthly payments, make sure that the taxes and insurance were paid, and generally act to protect FNMA's interest." (Dkt. # 8 ¶ 12).

The Burrs fell behind on their mortgage payments in the summer of 2009. (Dkt. # 8 ¶ 13). The Burrs allege that they applied to JPMorgan for a modification of their mortgage through the Home Affordable Modification Program ("HAMP"). HAMP is a federal mortgage assistance program for homeowners who are at imminent risk of or in default on mortgage loans. (Dkt. # 8 ¶ 24). The United States Treasury Department offers mortgage loan servicers, including JPMorgan, incentives to participate in loan modifications through HAMP. (Dkt. # 8 ¶ 15). If borrowers meet HAMP's minimum eligibility guidelines, loan servicers must not commence foreclosure and must suspend any foreclosure proceedings already in progress. (Dkt. # 8 ¶ 19). If a borrower is ineligible for a HAMP modification, the servicer must continue to suspend foreclosure proceedings while considering the borrower for other modification programs. (Dkt. # 8 ¶ 20). If all measures short of foreclosure have been exhausted, the servicers must consider a pre-foreclosure sale and the servicers receive an incentive for each successful pre-foreclosure sale. (Dkt. # 8 ¶ 23.)

The Burrs completed and signed a HAMP Loan Workout Plan, also known as a Trial Period Plan, ("TPP") with JPMorgan. (Dkt. # 8 ¶ 24; Dkt. # 11, Ex. A ). The Burrs allege that, instead of identifying the modification under HAMP and explaining the "trial-

period," JPMorgan told the Burrs that they would "test" the modification for three to four months before it would become permanent. The Burrs allege that under this "test," they were to pay a modified monthly payment of $552.71 for a three- to four-month trial period. (Dkt. # 8 ¶ 24). The Burrs allege that, if they could successfully negotiate their way through the "test period," then the modification would become permanent.

The Burrs allege that, although they continued to make these payments on time for fifteen months, they were not contacted by either FNMA or JPMorgan regarding the Burrs' loan. They allege that, in the sixteenth month after they began making the modified payments, JPMorgan "suddenly reappeared" and offered the Burrs a permanent modification of $956.00 per month with an increased interest rate of 7% (from an initial proposal of 5%) and with an additional nine years added to the remaining term of the note. (Dkt. # 8 ¶ 26). The Burrs allege that this amount represented "nearly a seventy-three percent increase over what they had been paying." (Dkt. # 8 ¶ 27).

The Burrs allege that, although they believed that their loan had been permanently modified after the initial three-month trial period expired, JPMorgan had discounted the loan during the fifteen months the Burrs were making reduced payments and then recapitalized the discount into the loan. (Dkt. # 8 ¶ 27). The Burrs allege that JPMorgan never disclosed the possibility that their loan might be modified to an increased payment. (Dkt. # 8 ¶ 27).

In October 2010, the Burrs allege that an unnamed JPMorgan representative told Mr. Burr that he was being offered "a new (and presumably improved) modification." (Dkt. # 8 ¶ 28). Under the "new" program, the Burrs' loan would be modified to their

3

previous monthly payments of $552.71 starting November 1, 2010. *Id.* They allege that the JPMorgan representative also advised Mr. Burr not make a mortgage payment in October 2010. *Id.* The Burrs never heard from the representative again and the name and location of this representative are not alleged in the Burrs' Second Amended Complaint.

From November 2010 to August 2011, the Burrs allege that they repeatedly reapplied for the original loan modification that they thought they had already been granted. These applications were never approved. Subsequently, JPMorgan foreclosed on the Burrs' home. (Dkt. # 8 ¶ 29).

The Burrs originally filed suit against Defendants in state court—first filing an Original Petition and Application for Temporary Injunction on August 30, 2011, and then filing a First Amended Petition and Applications for Temporary Restraining Order and Temporary Injunction on September 26, 2011.[3] The Defendants removed the case to federal court and filed their initial Motion to Dismiss or Alternatively for More Definite Statement and Brief in Support. (Dkt. # 1 and 4). In lieu of filing a response to the Defendants' Motion to Dismiss, the Burrs filed a Second Amended Complaint and Applications for Preliminary Injunctions ("Complaint") asserting claims against defendants for breach of contract, promissory estoppel, and violations of the Texas Finance Code arising from their handling of the modification of the Burrs' loan. (Dkt. # 8). Pending before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) for failing to state a claim upon which relief could be granted or in the

---

[3] Supplement to Notice of Removal (Dkt. # 2) at 6–15, Plaintiffs' Original Petition at 19–31, and Plaintiffs' First Amended Petition.

4

alternative, pursuant to Rule 12(e) for a more definite statement of the claims asserted against Defendants.

## II. RULE 12(b)(6) STANDARD FOR DISMISSAL

Rule 12(b)(6) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy this requirement, the statement must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L. Ed. 2d 1 (2002) (internal citations omitted); *see also Christopher v. Harbury*, 536 U.S. 403, 416, 122 S.Ct. 2179, 153 L. Ed. 2d 413 (2002) (the elements of the plaintiff's claims "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant"). The district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, L. Ed. 2d 80, 78 S.Ct. 99 (1957).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Id*. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful,

and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950.

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion."). The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROC. § 1487 (2d ed. 1990).

### III. ANALYSIS

The Burrs allege the following three causes of action in their Complaint: (1) breach of contract; (2) promissory estoppel; and (3) violations of the Texas Finance Code. (Dkt. # 8). The Defendants move to dismiss the Burrs' claims, arguing that the Burrs have failed to plead facts which, if true, would establish any of these causes of action against Defendants.

1. **Breach of Contract Claims**

A plaintiff asserting a breach of contract claim under Texas law must allege (1) the existence of a valid contract, (2) performance by plaintiff, (3) breach by defendant, and (4) damages resulting from the breach. *Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.*, 260 S.W. 3d 529, 536 (Tex. App.—Tyler 2008, pet. denied). Here, although the Burrs have valid contracts with JPMorgan, including a promissory note and a security instrument, the Complaint does not allege a breach of these original loan documents. Instead, the Burrs allege that they have stated claims for breach of contract because (1) their HAMP Loan Workout Plan, also known as a Trial Period Plan, ("TPP") is a valid contract with Defendants for the permanent modification of their home loan, and that Defendants breached this contract by not offering them a permanent loan modification; and (2) Defendants breached their HAMP and HAFA program contracts with FNMA by failing to follow various guidelines to offer the Burrs a permanent loan and that the Burrs are intended beneficiaries of those agreements.[4] The Court disagrees.

a. **Trial Period Plan.**

The Burrs' allegation that Defendants breached the terms of the TPP by not offering them a permanent modification is defeated by the plain language of the TPP agreement. This language clearly states that any permanent modification is subject to the

---

[4] HAFA is a sub-program of HAMP that offers the options of a short sale or a Deed-in-Lieu of foreclosure to homeowners who can no longer afford their mortgage payments. *Backal v. Fargo*, No. 4:11-CV-563, 2011 U.S. Dist. LEXIS 139144, at *2 (E.D. Tex. Nov. 3, 2011).

receipt of a signed modification agreement.[5] Although the TPP states that JPMorgan will provide the borrower with a Home Affordable Modification Agreement if the borrower is in compliance with the TPP, it also unequivocally states that the TPP does not constitute a permanent modification of the original loan. By signing the TPP, the Burrs attested that they:

> understand that this Plan is not a modification of the Loan Documents and that the *Loan Documents will not be modified unless and until . . . (ii) [the Burrs] receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.*[6]

The TPP further states that:

> "[i]f prior to the Modification Effective Date . . . *the Lender does not provide [the borrower] with a fully executed copy of . . . the Modification Agreement . . . the Loan Documents will not be modified and the Plan will terminate.*"[7]

Pursuant to this language, even if the Burrs fulfilled all of their obligations under the TPP as alleged in the Complaint, the TPP does not guarantee the permanent modification of the Burrs' loan or obligate Defendants to modify the loan. The TPP requires certain events to occur prior to the modification and makes the modification dependent upon the discretion of the Defendants. In this case, there is no allegation in the

---

[5] Although the court may not go outside the complaint when considering a motion to dismiss, the court may consider documents attached to a motion to dismiss if the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *see also Causey v. Sewell Cadillac-Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004). The Court finds that the TPP, referred to by the Burrs in their Complaint and attached to the Defendants' Motion, is central to the Burrs' breach of contract claim. *See* Complaint (Dkt. # 8) ¶¶ 24, 30; *see also* Motion (Dkt. # 11), Ex. A.

[6] Motion (Dkt. # 11), Ex. A ¶ 2(G) (emphasis added).

[7] Motion (Dkt. # 11), Ex. A ¶ 2(F) (emphasis added)

Complaint that the Burrs ever received a "fully executed copy of the Modification Agreement." Thus, as a matter of law, Defendants' alleged failure to permanently modify the Burrs' loan was not a breach of the TPP and this claim should be dismissed. *See Rackley v. JPMorgan Chase Bank, Nat. Ass'n*, No. SA-11-CV-387-XR, 2011 U.S. Dist. LEXIS 79323, at *11–12 (W.D. Tex. Jul. 21, 2011); *Pennington v. HSBC Bank USA N.A.*, No. A-10-785 LY, 2011 U.S. Dist. LEXIS 14744, at * 15–16 (W.D. Tex. Dec. 22, 2011) (collecting cases holding same).

### b. HAMP and HAFA Program Agreements

The Burrs also cannot state a breach of contract claim based on the HAMP and HAFA program agreements because they cannot allege facts clearly establishing that they are third-party beneficiaries of these agreements. In analyzing the viability of the Burrs' claims as pled, the Court looks to the substantive law of contracts in the state of Texas. Here, the Burrs assert third-party beneficiary status to Defendants' agreements with the Secretary of the Treasury, made pursuant to HAMP and HAFA. Under Texas law, establishing a third-party beneficiary claim is a difficult burden; there is a presumption against the finding and enforcement of third-party beneficiary agreements. *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 12 (Tex. App.—Dallas 1988, writ denied). The contracting parties' intent is controlling in determining whether a party is a third-party beneficiary of a contract. *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503 (Tex. 1975); *see also Sowell v. Northwest Cent. Pipeline Corp.*, 703 F. Supp. 575, 581 (N.D Tex. 1988). In determining intent, Texas courts presume that parties contract only for themselves and not for the benefit of third parties, unless the obligation to the third

9

party is clearly and fully spelled out. *Talman Home Fed. Sav. & Loan Ass'n of Ill. v. Am. Bankers Ins.*, 924 F.2d 1347, 1351 (5th Cir. 1991); *Corpus Christi Bank & Trust*, 525 S.W 2d at 503–04; *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 10 (Tex. App.—Dallas 1988, writ denied); see *Republic Nat'l Bank of Dallas v. Nat'l Bankers Life Ins. Co.*, 427 S.W.2d 76, 79 (Tex. Civ. App. 1968, writ ref'd n.r.e.). In other words, a party claiming third-party beneficiary status will succeed or fail according to the contract terms, "as disclosed within the four corners of the instrument." *Greenville Indep. Sch. Dist. v. B & J Excavating, Inc.*, 694 S.W.2d 410, 412 (Tex. App.—Dallas 1985, writ ref'd n.r.e ); *Republic Nat'l. Bank of Dallas*, 427 S.W.2d at 79.

Here, the Burrs have not met their burden by alleging facts clearly evidencing a legislative intent to provide borrowers with a legal cause of action for breach of contract under HAMP or HAFA. As courts have repeatedly held, borrowers are not third-party beneficiaries of a lending institution's HAMP and HAFA agreements. *See Cade v. BAC Home Loans Servicing,* No. H-10-4224, 2011 U.S. Dist. LEXIS 65045, at *12–13 (S.D. Tex. June 20, 2011); *Backal v. Wells Fargo*, No. 4:11-CV-563, 2011 U.S. Dist. LEXIS 139144, at *7 (E.D. Tex. Nov. 3, 2011). It is undisputed that defendant lending institutions have an obligation to follow applicable contract laws, HAMP and HAFA guidelines. However, as numerous courts have noted, borrowers do not have standing to challenge compliance with these agreements by lending institutions. *Simon v. Bank of Am., N.A.*, No. 10-cv-00300-GMN-LRL, 2010 U.S. Dist. LEXIS 63480, 2010 WL 2609436, at *10 (D. Nev. June 23, 2010) (collecting cases). Asserting rights as a third party amounts to asserting a private right of enforcement on a contract; absent clear

contractual intent to confer third-party beneficiary rights, the Burrs do not have standing to bring an action for breach of contract under HAMP or HAFA. *Id.* Thus, this claim should also be dismissed.

### 2. Claim for Promissory Estoppel

To state a claim for promissory estoppel a plaintiff must plead facts showing (1) a promise, (2) foreseeability of reliance by the promisor, and (3) substantial and reasonable reliance by the promisee to its detriment, and (4) enforcement of the promise is necessary to avoid injustice. *Motten v. Chase Home Fin.*, No. H-10-4994, 2011 U.S. Dist. LEXIS 69383, at * 35 (S.D. Tex. June 28, 2011). As an alternative to their breach of contract claim, the Burrs allege that "Defendants promised to offer a modification under HAMP if the Burrs qualified and made timely payments." The Burrs argue that this was a "promise made outside of the existing promissory note and deed of trust contract." (Complaint ¶ 34).

#### a. Trial Period Plan

Texas courts have recognized promissory estoppel as an affirmative claim in certain limited circumstances:

> Where the promisee has failed to bind the promisor to a legally sufficient contract, but where the promisee has acted in reliance upon a promise to his detriment, the promisee is to be allowed to recover no more than reliance damages measured by the detriment sustained.

*Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1985). Promissory estoppel, however, may not be used to create a contract that does not otherwise exist. *Id.* at 96; *see also Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 674, 2010 Tex. App. LEXIS 7261, at * 31–32

11

(Tex. App.—Fort Worth August 31, 2010) (mem. op.) (noting that breach of contract and promissory estoppel are mutually exclusive claims).

To the extent that the Burrs base this claim on the alleged promise to permanently modify the loan contained in the TPP, as the Court has found above, the TPP in no way sets forth a promise that a future loan modification would take place. Because there is no guarantee of a loan modification in the TPP, the Burrs cannot claim they relied to their detriment on such a promise. *See Pennington v. HSBC Bank USA, Nat'l Ass'n*, No. A-10-CA-785 LY, 2011 U.S. Dist. LEXIS 147411, at *30–31 (W.D. Tex. Dec. 22, 2011). This is also true for any promise to the Burrs that they could qualify for a loan modification by completing a TPP—a loan modification; by the plain terms of the TPP, there was never a certainty, and the Burrs relied upon a promise of what might happen at their own peril. The Burrs have failed to plead a promise and have failed to plead reasonable reliance on any promises set forth by the TPP or any promise outside the TPP. This claim should be dismissed.

### b. Oral Promise

To the extent that the promissory estoppel claim is also based on an alleged oral promise made by Defendants in October 2010 to modify the Burrs' loan, this claim is barred by the statute of frauds. In this case, Defendants argue that the principal balance of the loan was $73,000 and under Texas law, any loan agreement for an amount exceeding $50,000 must be in writing and signed by the party bound to it. *See* TEX. BUS. & COM. CODE § 26.02(b) (2009) (stating statute of frauds for loan agreements). The

Burrs respond that the doctrine of promissory estoppel creates an exception to the statute of frauds for loan agreements.

Texas courts have not specified whether equitable exceptions apply to Texas's statute of frauds for loan agreements.[8] Courts that have considered an estoppel defense as an exception to the statute of frauds for a loan agreement have relied on the following legal principles:[9]

> For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written agreement that had been prepared and that would satisfy the requirements of the statute of frauds. It is the promise to sign a written agreement or enter into a written agreement that is determinative. Promissory estoppel sufficient to remove a contract from the statute of frauds requires that the promisor agree to sign a document that had already been prepared or "whose wording had been agreed upon" that would satisfy the statute of frauds. A mere promise to prepare a written contract is not sufficient.[10]

Here, the Burrs have not alleged the existence of a written agreement that had been prepared or whose wording had already been agreed upon with the Defendants that would satisfy the requirements of the statute of frauds. The Burrs allege a telephone conversation occurred in October 2010 wherein a JPMorgan representative told Mr. Burr that he was being offered a new modification program and that he should not make a

---

[8] *See Bank of Texas, N.A. v. Gaubert*, 286 S.W.3d 546, 554 (5th Cir. 2009) ("No case has expressly held that the equitable exceptions to the traditional statute of frauds also apply to section 26.02 [(the loan statute of frauds)].").

[9] For courts citing these legal principles, *see George-Baunchand v. Wells Fargo Home Mortg.*, No. H-10-3828, 2011 U.S. Dist. LEXIS 143788, 2011 WL 6250785, at *7 (S.D. Tex. Dec. 14, 2011); *Wachovia Bank, Nat'l Ass'n v. Schlegel*, No. 3:09-CV-1322-D, 2010 U.S. Dist. LEXIS 66011, 2010 WL 2671316, at *5 (N.D. Tex. June 30, 2010),

[10] *Montalvo v. Bank of America Corp.* No. SA-10-CV-0360 XR, 2012 U.S. Dist. LEXIS 2071, at * 9–10 (W.D. Tex. Jan. 6, 2012) (citing *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex. App.—Houston [14 Dist.] 2005, pet. denied) (citations omitted).

13

mortgage payment in October 2010. Notably, the Burrs do not allege that the Defendants promised to sign a written agreement that had been prepared and that would satisfy the requirements of the statute of frauds, nor do they describe the wording of the agreement the Defendants promised to sign. *Deuley v. Chase Home Fin. LLC*, H-05-04253, 2006 U.S. Dist. LEXIS 28414, *2-3 (S.D. Tex. April 26, 2006); *Montalvo v. Bank of America Corp.*, SA-10-cv-0360, 2012 U.S. Dist. LEXIS 2071 (W.D. Tex. January 6, 2012). In fact, the Complaint alleges that the Burrs never even knew which new modification program was being offered because they never heard from the representative again. Similarly, they do not know her name or location, and they admit they never received any other information regarding the program from Defendants. (Dkt. # 8 ¶ 28). In the absence of allegations that there was a promise to sign a written agreement that had already been prepared and that would satisfy the requirements of the statute of frauds, the Burrs cannot state a promissory claim and this claim should also be dismissed.[11]

---

[11] This corresponds with the reasoning of the court in *George-Baunchand*:

> [T]he plaintiff's argument that the promissory estoppel exception to the statute of frauds applies is unpersuasive because there is no evidence that [the defendant bank] promised to sign an existing written loan modification agreement. For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written agreement that had been prepared and that would satisfy the requirements of the statute of frauds. A promise to prepare a written contract is not sufficient. The defendant must have promised to sign a particular agreement which was in writing at the time. Viewed in the light most favorable to [the plaintiff], the summary judgment evidence does not reveal that [the bank] promised to sign an existing loan modification agreement. The affidavit [the plaintiff] submitted in opposition to the motion for summary judgment does not mention the existence of a written loan modification agreement.

### 3. Violations of the Finance Code

First, the Burrs argue that they have stated a claim against Defendants for violation of Texas Finance Code Section 392.301(a)(8) because they have alleged that JPMorgan's threat to foreclose on the Burrs' home without properly considering the Burrs for HAMP or HAFA was a threat to take an action prohibited by law. Complaint (Dkt. #8) ¶ 40. Texas Finance Code Section 392.301(a)(8) prohibits defendants from threatening to take an action prohibited by law. Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006). However, the Burrs do not allege facts establishing that HAMP and HAFA are anything more than mere guidelines; nor do they allege that the programs prohibit or create perquisites to foreclosure. Furthermore, it is well established that JPMorgan's

---

No. H-10-3828, 2011 U.S. Dist. LEXIS 143788, at *19 (S.D. Tex. Dec. 14, 2011) (citations omitted); *see also In re Harris*, No. 10-39586, 2011 Bankr. LEXIS 2656, 2011 WL 2708691, at *4-5 (Bankr. S.D. Tex. July 11, 2011) ("Promissory estoppel does not apply here because [the debtor] does not allege that [the bank] promised to sign a written agreement. For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign an existing written agreement that had already been prepared. Here, . . . there was neither an existing written forbearance agreement nor an existing written agreement to cancel the foreclosure proceeding. [The debtor] states that on September 6, 2010, a [bank] agent told [the debtor] that she would contact their attorneys and inform them that they had agreed to cancel the foreclosure date of September 7, 2010. However, [the debtor] provides no evidence that there was a promise by [the bank] to sign an existing document. A mere promise to prepare a written contract is not sufficient."); *Schlegel*, No. 3:09-CV-1322-D, 2010 U.S. Dist. LEXIS 66011, 2010 WL 2671316, at *5 ("The [borrowers] have not demonstrated any reason why the Texas statute of frauds does not preclude [them] from relying on the alleged oral promises to support their affirmative defenses. . . . For their promissory estoppel defense to survive the statute of frauds, the [borrowers] must adduce evidence that [the bank] made an oral promise to sign a writing extending the loans . . . or promised that the statute was satisfied in relation to the new terms. The [borrowers] only assert that [bank] employees promised that the loans would be extended, not that there was a promise to sign a writing to that effect. The defense therefore cannot survive the statute of frauds.") (citations omitted).

15

foreclosure on the Burrs' home after the Burrs admittedly defaulted on their mortgage loan is not an action prohibited by law. *See Watson v. CitiMortgage, Inc.*, No. 4:10-CV-707, 2012 U.S. Dist. LEXIS 13527, at * 21 (E.D. Tex. Feb. 3, 2012) ("Foreclosure is not an action prohibited by law.") Accordingly, this claim should be dismissed.

Next, the Burrs argue that they have also stated a claim against Defendants for violation of Texas Finance Code Section 392.304(a)(8), by alleging that Defendants failed to "account for fifteen months of trial payments and provide a status on the permanent modification." (Dkt. # 8 ¶ 41). Texas Finance Code Section 392.304(a)(8) prohibits misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding. Tex. Fin. Code Ann. § 392.304(a)(8) (West 2011). "For a statement to constitute a misrepresentation under the TDCA, the debt collector must have made an affirmative statement that was false or misleading." *Bellaish v. Chase Home Fin., LLC*, No. H-10-2791, 2011 U.S. Dist. LEXIS 119250, at *5 (S.D. Tex. Oct. 14, 2011). Here, the Burrs do not allege that the Defendants ever made an affirmative misrepresentation. Rather, the Burrs allege that the Defendants failed to make statements required under the Trial Period Plan. Thus, the Burrs' claim for violation of Texas Finance Code Section 392.304(a)(8) should be dismissed.

Finally the Burrs argue that they have stated a claim against Defendants for violation of Texas Finance Code Section 392.304(a)(19) by alleging that JPMorgan "deceptively" told the Burrs that (1) if they "made the trial payments under HAMP, [their] loan would be permanently modified" and (2) "they would be approved for

16

modification if they stopped paying in October 2010 and waited to reapply in November." (Dkt. # 8 ¶ 41). Texas Finance Code Section 392.304(a)(19) operates effectively as a "catch-all" provision, in prohibiting a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code Ann. § 392.304(a)(19).

Defendants argue, in essence, that these allegations fail to state a claim because they are simply implausible given the plain language of the TPP signed by the Burrs and also referenced to in the Complaint. Based on this document, Defendants argue that the Burrs could not have been deceived in any way regarding permanent modification of their loan. In support of their argument they cite to the language of the TPP, discussed in the Court's analysis above, stating that the modification of the loan was not guaranteed by merely applying for one and that no modification was to occur "unless and until [the Burrs] . . . (ii) receive a fully executed copy of the Modification Agreement, and (iii) the Modification Effective Date has passed."

However, it is not clear from the Complaint whether the Burrs' claims under this section of the Code are based on promises made in connection to the TPP that the Burrs signed, or oral promises made by Defendants regarding another program. It is also not clear what actual damages, if any, were caused by this conduct. Accordingly the Court finds that Defendants' Motion to Dismiss the Burrs' claim under Section 392.304(a)(19)

should be denied and the Burrs should be granted leave to replead this claim and their damages with greater specificity.[12]

### 4. Specificity of Allegations Under Rule 12(e)

Finally, Defendants argue that the Court should dismiss this action against FNMA, or in the alternative, the Burrs should be required to replead under Rule 12(e) and identify which of the Complaint's allegations are asserted against FNMA and which are asserted against JPMorgan. *See* FED. R. CIV. P. 12(e): *see also Motten v. Chase Home Fin.*, No. H-10-4994, 2011 U.S. Dist. LEXIS 69383, at * 11 (S.D. Tex. Jun. 28, 2011) ("When a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before submitting a responsive pleading."). The Court agrees that the Complaint is not clear as to the claims and allegations being made against FMNA separate and apart from those being made against JPMorgan. However, because the Court finds it would not be futile to do so, the Court grants the Burrs leave to amend their complaint to specify which claims and allegations are being made against FMNA. Thus Defendants' Motion to Dismiss FNMA from this action on these grounds is denied.

### III. CONCLUSION

The Court **GRANTS** the Defendants' Motion to Dismiss the Burrs' claims for breach of contract, promissory estoppel, and violations of Sections 392.301(a)(8) and

---

[12] Defendants also move the Court to dismiss the Burrs' request for injunctive relief because they have not set forth a valid cause of action to support the granting of this relief. Since, as noted above, the Burrs have at least one claim that survives dismissal under Rule 12(b)(6) and the Burrs are granted leave to amend their Complaint, Defendant's Motion is denied.

392.304(a)(8) of the Texas Finance Code. The Court **DENIES** the Defendants' Motion to Dismiss the Burrs' claims for violation of Section 292.304(a)(19) of the Texas Finance Code. The Burrs are **ORDERED** to replead their claim for violation of Section 292.304(a)(19) of the Texas Finance Code with greater specificity as noted above within 14 days from the date of this Order.

The Court **GRANTS** the Defendants' Motion for a More Definite Statement regarding the conduct of the individual Defendants. The Burrs are **ORDERED** to replead their claims to specify which claims and allegations are being made against FMNA as noted above within 14 days from the date of this Order.

Based on the Court's review of the Complaint's allegations, the Court finds that it may not be futile to allow the Burrs to replead this suit to state valid causes of action against Defendants. Accordingly, the Court **GRANTS** the Burrs leave to amend their Complaint to state valid causes of action and actual damages caused to them by Defendants' conduct within 14 days from the date of this Order. The Burrs are cautioned that any new allegations must be sufficient with respect to facts and law to satisfy the standards of Rule 11 and Rule 12(b)(6) in accord with the Court's discussion in this Order.

SIGNED at Houston, Texas on March 28, 2012.

_____
George C. Hanks, Jr.
United States Magistrate Judge